```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
DEUTSCHE MEXICO HOLDINGS S.A.R.L.,            :
SÜDDEUTSCHE VERMÖGENSVERWALTUNG :
GMBH, and DEUTSCHE BANK                        :   OPINION AND ORDER
AKTIENGESELLSCHAFT, CAYMAN ISLANDS :              GRANTING MOTION FOR
BRANCH,                                        :   INJUNCTION IN AID OF
                                               :   ARBITRATION
                          Petitioners,         :
     -against-                                 :   19 Civ. 8692 (AKH)
                                               :
ACCENDO BANCO, S.A.,                           :
                                               :
                          Respondent.          :
------------------------------------------------------------- X
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

Petitioners and Respondent Accendo Banco, S.A. ("Accendo") are engaged in arbitration before the International Chamber of Commerce ("ICC") regarding their dueling claims that the other breached a contract (the "Purchase Agreement") to sell Petitioners' subsidiaries in Mexico to Accendo. Prior to the onset of this ICC arbitration, Petitioners terminated the Purchase Agreement, claiming that Accendo had materially breached its terms, and entered into discussions with third parties to sell the Mexican subsidiaries. Meanwhile, Accendo obtained an *ex parte* injunction from a Mexican court (the "Mexico Injunction"), enjoining Petitioners from selling the Mexican subsidiaries to any party other than Accendo. Petitioners, in response, on September 18, 2019, filed for injunctive relief in this Court, alleging that Accendo had covenanted in the Purchase Agreement not to seek pre-arbitral relief from any court outside the Southern District of New York or a New York state court of competent jurisdiction. On September 26, Accendo, in turn, applied to the ICC for an emergency arbitrator to grant substantially the same injunctive relief as that which Accendo obtained in the Mexico Injunction. On October 14, the arbitrator denied the application.

I grant Petitioners' motion for injunctive relief for the reasons set forth below.

## Background

*A. Relevant sections of the Purchase Agreement*

The parties entered into the Purchase Agreement that underlies the present dispute in October 2016. *See* Purchase Agmt., ECF No. 1-1. Under the Purchase Agreement, Petitioners agreed to sell to Accendo, a Mexican bank, two of Petitioners' Mexican subsidiaries—one a bank (Deutsche Bank México, S.A., Institución de Banca Múltiple); the other, a broker-dealer (Deutsche Securities, S.A. de C.V., Casa de Bolsa); both owned by Petitioners' parent, Deutsche Bank AG. *See* Purchase Agmt., ECF No. 1-1, at A-1. At the time the parties entered into the Purchase Agreement, and ever since, Petitioners have been under pressure from Mexican regulatory authorities to sell their Mexican assets. *See* Petition, ECF No. 1, at ¶ 47.

In the Purchase Agreement, the parties agreed to submit all disputes relating to the Purchase Agreement to ICC arbitration in New York:

> [A]ny dispute, claim or controversy resulting from, relating to or arising out of this Agreement, including the breach, termination enforcement, interpretation, or validity thereof, shall be submitted to final and binding arbitration administered by the [ICC] . . . . The seat of arbitration shall be New York City, New York.

Purchase Agmt., ECF No. 1-1, at § 10.4.

This same section included a forum selection clause, in which the parties agreed that any and all injunctive relief sought in aid of arbitration would be submitted to the exclusive jurisdiction of the Southern District of New York, or the state courts in New York County:

> By agreeing to arbitration, the Parties do not intend to deprive any court of its jurisdiction to issue a pre-arbitral injunction, pre-arbitral attachment or other temporary or interim order in aid of arbitration proceedings. In any such action, each of the parties hereto irrevocably and unconditionally . . . submits to the exclusive jurisdiction and venue of the United States District Court for the Southern District of New York . . . . or, if such court does not have jurisdiction, the Supreme Court of the State of New York or any court of competent civil jurisdiction sitting in New York County, New York.

*Id.*

*B. The parties' conduct under the Purchase Agreement*

Closing under the Purchase Agreement was subject to numerous conditions. As relevant for present purposes, Accendo covenanted that it would have sufficient funds by the time the transaction closed:

> Buyer . . . agrees that its obligations hereunder are not subject to any conditions regarding such Buyer's or any other Person's ability to obtain financing for the consummation of the transactions contemplated by this Agreement and the failure of Buyer to obtain financing for the consummation of the transactions contemplated by this Agreement is a risk of Buyer and not a risk of Sellers. . . .
>
> Buyer does not have reason to believe that there shall not be sufficient funding, financing and/or cash-in-hand available to Buyer to enable Buyer to consummate the transactions contemplated by this Agreement . . .

Purchase Agmt., ECF No. 1-1, at § 5.8. This covenant was designated a "Fundamental Representation" in the Purchase Agreement. *Id.* at § 1.1(eeee). Failure by Accendo to satisfy this or other "Fundamental Representations" by the closing date, gave Petitioners the right to terminate the contract:

> The obligations of Sellers to effect the Closing shall be subject to the following conditions . . .
>
> The Buyer's Fundamental Representations shall be true and correct in all respects as of the Closing Date as though made on and as of the Closing Date.

*Id.* at § 7.3(a).

The Purchase Agreement further provided that if the closing did not occur by an "outside date" of October 31, 2017, Petitioners had the right to terminate the contract:

> The Agreement may be terminated . . . by Sellers if the Closing shall not have occurred on or before October 31, 0217 (the "Outside Date").

*Id.* at § 8.1(b). After two amendments, the outside date was adjourned to June 30, 2018. *See* First Amendment to the Purchase Agmt., Oct. 20, 2017, ECF No. 1-2; Second Amendment to the Purchase Agmt., Mar. 8, 2018, ECF No. 1-3.

3

The closing did not occur by June 30, 2018. Over the summer of 2018, each side contended the other was in breach of the Purchase Agreement. *See* Petition, ECF No. 1, at ¶ 35. Petitioners, in communicating their view that Accendo had breached, expressed repeated concern that Accendo did not possess the funds necessary to close the deal. *See id.*; *see also* Letter from Petitioners to Accendo, Feb. 13, 2018, ECF No. 13-4. On October 26, 2018, Petitioners terminated the Purchase Agreement pursuant to sections 7.3 and 8.1 thereof (excerpted above), due to the failure to achieve a closing by the then-outside date. *See id.* at ¶ 38.

*C. The Mexico Injunction*

Meanwhile, on April 2, 2018, Accendo obtained an injunction, *ex parte* from a Mexican court, which, after a later *ex parte* amendment thereto, enjoined Petitioner, an affiliate of Petitioner, and two Mexican regulatory entities, from selling, taking any action in furtherance of selling, or authorizing the sale of, the Mexican subsidiaries, to any party other than Accendo:

> As a provisional precautionary measure it is ordered the suspension of any ongoing procedure with any person relating to the potential sale of shares and/or assets, including but not limited to, the suspension of negotiations, due diligence, execution of memoranda of understanding, letters of intent and/or any other act leading to the sale of shares and/or assets of [the Mexican subsidiaries] . . . to any person other than [Accendo].
>
> As a provisional precautionary measure it is ordered the suspension of any ongoing proceeding for authorization before the [Mexican regulatory entities] for the sale and/or transfer of shares and/or assets of [the Mexican subsidiaries] . . . to any person other than [Accendo].

Mexico Injunction, ECF 1-4, at 5-6.

On September 9, 2019, a copy of the Mexico Injunction was, for the first time, served on Petitioners. Petition, ECF No. 1, at ¶ 44. Service of the Mexico Injunction brought to a halt Petitioners' ongoing negotiations with several would-be purchasers of the Mexican subsidiaries. *Id.* at ¶ 51.

4

*D. Arbitration*

On September 4, 2019, days before Petitioners first became aware of the Mexico Injunction, Accendo filed a request for ICC arbitration, seeking adjudication of their claim that Petitioner had breached the Purchase Agreement by refusing to consummate the deal. *See* Request for Arbitration, Sept. 4, 2019, ECF No. 31-1.

On September 18, 2019, Petitioners filed a petition to this Court, asking that Accendo be required to withdraw and/or cease enforcement of the Mexico Injunction because the Purchase Agreement requires pre-arbitral injunctions to be pursued only in the Southern District of New York or New York state courts. *See* Petition, ECF No 1.

On September 26, 2019, after the present proceedings were underway, Accendo filed an application with the ICC, in which Accendo asked for an emergency arbitrator to be appointed to enjoin the sale of Petitioners' Mexican subsidiaries to a third-party. *See* Application for Emergency Measures, September 26, 2019, ECF No. 31-2, at ¶ 92.

On October 14, 2019, the emergency arbitrator issued a written decision denying Accendo's request for injunctive relief. Decision, Oct. 14, 2019, ECF No. 32-2. The emergency arbitrator found that Accendo had kept the Mexico Injunction hidden from Petitioners until September 2019, that Accendo lacked any "legitimate reason for this delay," and thus any "urgency" attendant to the purported need for injunctive relief was of Accendo's "own making." *Id.* at ¶¶ 11.66-67. The arbitrator further found that Accendo had not shown it would face "irreparable harm if the requested measures [were] denied," reasoning that Accendo's claimed harm of losing the opportunity to consummate the Purchase Agreement could amount to harm only if Accendo were indeed "ready, willing and able to close on the terms set out in the Purchase Agreement." *Id.* at ¶ 11.71. The arbitrator found that Accendo lacks "the funds needed to close," *id.* at ¶ 11.74, and denied the relief sought by Accendo.

**Discussion**

*A. Jurisdiction*

Federal courts are charged with enforcing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which covers arbitral agreements "arising out of a legal relationship . . . [,] considered as commercial," and not "entirely between citizens of the United States." 9 U.S.C. §§ 201, 202. Actions "under the Convention shall be deemed to arise under the laws and treaties of the United States." *Id.* at § 203. Section 206 of this same title empowers courts to "direct that arbitration be held in accordance with the agreement at issue," *id.* at § 206, and the Second Circuit has held that "entertaining an application for a preliminary injunction in aid of arbitration is consistent with the court's powers pursuant to § 206," *Borden, Inc. v. Meiji Milk Prods. Co.,* 919 F.2d 822, 826 (2d Cir. 1990). That an arbitration has already begun and the parties have appeared therein does not prevent a court from entertaining a request for interim relief. *See id.*; *see also Venconsul N.V. v. Tim Intern. N.V.,* No. 03-cv-5387, 2003 WL 21804833, at *3 (S.D.N.Y. Aug. 6, 2003).

Accendo argues that jurisdiction is lacking here because the relief sought by Petitioners is not "in aid" of arbitration, since no term of the Mexico Injunction prevents the parties from continuing with the arbitration. I disagree. The Mexico Injunction affects both the remedial discretion of the arbitrator and the arbitration procedure agreed to by the parties.

*1. The Mexico Injunction interferes with the remedies available in arbitration*

The Mexico Injunction enjoins Petitioners from "any act, agreement, and/or contract, which purpose is, directly or indirectly, the sale of the [Mexican subsidiaries]" to any party other than Accendo. Mexico Injunction, ECF No. 1-4, at 5. The Mexico Injunction seeks on its face to freeze a sale of entities in a manner contrary to the arbitrator's possible ruling.

6

## 2. The Mexico Injunction violates the forum selection clause

The Mexico Injunction also compromises the arbitration procedure agreed to in the Purchase Agreement. The Purchase Agreement provides that any claim "relating to" or "arising out of" the agreement shall be submitted to ICC arbitration, and that pre-arbitral relief shall be subject "irrevocably and unconditionally" to the "exclusive jurisdiction" of the Southern District of New York or New York state courts of competent jurisdiction:

> [A]ny dispute, claim, or controversy resulting from, relating to or arising out of this Agreement . . . shall be submitted to final and binding arbitration administered by the [ICC] . . . .
>
> By agreeing to arbitration, the Parties do not intend to deprive any court of its jurisdiction to issue a pre-arbitral injunction, pre-arbitral attachment of other temporary or interim order in aid of arbitration proceedings.[1] In any such action, each of the parties hereto irrevocably and unconditionally (i) submits to the exclusive jurisdiction and venue of the United States District Court for the Southern District of New York . . . if such court does not have jurisdiction, the Supreme Court of the State of New York or any court of competent civil jurisdiction sitting in New York County, New York.

Purchase Agmt., at § 10.4(c), ECF No. 1-1, at 64. By running to the Mexican court to freeze the assets at issue in the Purchase Agreement, Accendo clearly violated its covenant to bring all pre-arbitral injunctions "irrevocably and unconditionally" before the Southern District of New York or New York state courts if the Southern District "does not have jurisdiction."

\* \* \*

In sum, this Court has jurisdiction. The next question is whether the court should exercise its jurisdiction in aid of arbitration in the manner requested by Petitioners.

---

[1] At oral argument, Accendo argued that this language, *i.e.*, "the Parties do not intend to deprive any court of its jurisdiction to issue a pre-arbitral injunction," should be understood to mean that jurisdiction over the instant matter is not limited to New York state and federal courts as Petitioners claim. *See* Oral Argument Tr., Oct. 4, 2019, ECF No. 25, at 24:16-19. This interpretation ignores the very next sentence, providing that in "any such action," *i.e.*, any action seeking a pre-arbitral injunction, the parties submit "irrevocably and unconditionally" to the "exclusive" jurisdiction of the Southern District of New York. *See County of Suffolk v. Alcorn*, 266 F.3d 131, 139 (2d Cir. 2001) ("It is axiomatic that courts construing contracts must give specific terms and exact terms . . . greater weight than general language.") (quotation marks omitted)

7

*B. Injunctive Relief*

The Second Circuit has outlined the standard for enjoining a party from pursuing parallel litigation in a foreign forum, drawing the applicable principles from *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir. 1987):

> It is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum. . . .
>
> An anti-suit injunction against parallel litigation may be imposed only if: (A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined. . . . Once past this threshold, courts are directed to consider a number of additional factors.

*Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems Information Tech., Inc.*, 369 F.3d 645 (2d Cir. 2004) (citing *China Trade*, 837 F.2d at 37). Decisions interpreting *China Trade* have held that (a) the parties need not be identical in both matters, so long as the "real parties in interest" are the same, *see Motorola Credit Corp. v. Uzan*, No. 02-CV-666, 2003 WL 56998 (S.D.N.Y. Jan. 7, 2003); and (b) the 'additional factors' to be considered include

> whether the parallel litigation would: "(1) frustrate a policy in the enjoining forum; (2) be vexatious; (3) threaten the issuing court's . . . jurisdiction; (4) prejudice other equitable considerations; or (5) result in delay, inconvenience, expense, inconsistency, or a race to judgment."

*WTA Tour, Inc. v. Super Slam Ltd.*, 339 F.Supp.3d 390, 403 (S.D.N.Y. 2018) (quoting *Keep on Kicking Music, Ltd. v. Hibbert*, 268 F.Supp.3d 585, 590 (S.D.N.Y. 2017)).

If *China Trade* is satisfied, the movant must then meet

> the ordinary requirements for a preliminary injunction, showing (1) irreparable harm in the absence of the injunction; (2) either a likelihood of success on the merits, or both serious questions going to the merits and a balance of hardships in the movant's favor; and (3) that a preliminary injunction is in the public interest.

*WTA Tour*, 339 F.Supp.3d at 403 (citing *North American Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)).

8

*1. Threshold Requirements*

Petitioners satisfy *China Trade*'s threshold requirements because (a) the Mexico Injunction and present action involve the same parties in interest, and (b) a resolution in this case will be dispositive as to the rights of the parties under the Purchase Agreement to seek relief in aid of arbitration from any court other than the Southern District of New York.

First, The Mexico Injunction involves the same parties. It was initiated by Accendo, and binds Petitioners and an affiliate of Petitioners ("Deutsche Bank Mexico, S.A., Institucion De Banca Multiple"). Mexico Injunction, ECF No. 1-4. Naming the affiliate does not change the real parties in interest. *See WTA Tour*, 339 F.Supp.3d at 403 (substantial similarity when an "additional part[y]" was an "affiliate[] of the existing parties").

That the Mexico Injunction also purports to bind two Mexican regulatory entities is also irrelevant. These regulators are tasked with "approv[ing] any sale transaction involving [Petitioners' Mexican subsidiaries]." Mem. in Opp. to Pet., ECF No. 17, at 7; *See* Mexico Injunction, ECF No. 1-4. The regulatory entities are not necessary parties. If Petitioners are enjoined from taking any action to dispose of the subsidiaries, enjoining the regulatory entities from approving any such disposal is redundant. *See Motorola Credit Corp. v. Uzan*, No. 02-cv-666, 2003 WL 56998, at *2 (S.D.N.Y. Jan. 7, 2003) (substantial similarity when additional parties "were not necessary" to achieve the result sought in both parallel actions).

As to the second *China Trade* threshold requirement, a ruling here, *e.g.*, holding that the Mexico Injunction was obtained in violation of the Purchase Agreement, will be dispositive of the Mexico Injunction.

Thus, the two *China Trade* threshold criteria are satisfied.

*2. Discretionary Factors*

The *China Trade* discretionary factors also favor injunctive relief by this Court. The Purchase Agreement designates New York as the exclusive forum for pre-arbitral injunctive

9

relief. Accendo's noncompliance with this proviso runs contrary to this Circuit's "strong public policy in favor of forum selection and arbitration clauses," *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (quotation marks omitted). The Mexico Injunction plainly attempts to "sidestep" or make an "end run[]" around the Purchase Agreement's forum selection clause, and that cannot be permitted. *Storm LLC v. Telenor Mobile Comms. AS*, No. 06-cv-13157, 2006 WL 3735656, at *9 (S.D.N.Y. Dec. 15, 2006) (if a party "attempt[s] to sidestep arbitration . . . little else is required to authorize an injunction") (quotation marks omitted); *Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 441 F.Supp.2d 552, 553 (S.D.N.Y. 2007) ("[A]ttempts to make end runs around the forum selection clause and this Court's jurisdiction cannot be tolerated. Indeed, the justification for an anti-suit injunction crests when a party seeks the aid of a foreign proceeding in a blatant attempt to evade the rightful authority of the forum court.").

### 3. Preliminary Injunction Requirements

The traditional requirements for injunctive relief, namely (a) likelihood of success on the merits, (b) irreparable harm, and (c) consistency with public interest, are satisfied here.

#### i. Likelihood of Success

Petitioners are likely to succeed on the merits of their claim that the Mexico Injunction was obtained in violation of the Purchase Agreement. The forum selection clause is clear, and does not allow a contracting party to seek a pre-arbitral injunction from a court outside the ICC, the Southern District of New York, or, if the Southern District lacks jurisdiction, the New York state courts of competent jurisdiction.

Accendo argues that the operative question is whether Petitioners are likely to succeed on the underlying contract disputes in the arbitration. *See* Mem. in Opp. to Pet., ECF No. 17, at 25. But, as other courts in this district have concluded, the correct question is whether Petitioners are likely to succeed on their claim that obtaining the Mexico Injunction in the first instance ran afoul of the Purchase Agreement, not who is likely to win the arbitration itself. *See,*

10

e.g., *WTA Tour*, 339 F.Supp.3d at 406 ("Petitioners are correct that the relevant inquiry is the likelihood of success on the merits of their argument that the claims must be submitted to arbitration—not, as respondents claim, on the merits of the substantive . . . claims."); *Int'l Fashion Products, B.V. v. Calvin Klein, Inc.*, No. 95-cv-0982, 1995 WL 92321, at *2 (S.D.N.Y. Mar. 7, 1995); *Storm*, 2006 WL 3735657, at *8.[2]

### ii. Irreparable Harm

Petitioners argue that they face irreparable harm absent an injunction because the Mexico Injunction threatens to (a) force Petitioners to litigate in a forum they contracted to avoid; and (b) thwart Petitioners' attempt to sell their Mexican subsidiaries, leaving Petitioners without monetary redress due to Accendo's tenuous financial condition. These factors, taken together, demonstrate irreparable harm.

For one thing, it is undeniable that dragging Petitioners into litigation in a court other than the court having exclusive jurisdiction under the Purchase Agreement constitutes irreparable harm. *See, e.g., WTA Tour*, 339 F.Supp.3d at 406 ("Petitioners will suffer irreparable harm if they are forced to litigate rather than arbitrate this dispute. Even if they ultimately prevail in the foreign proceedings, they will have lost the very benefit of the arbitration clause, which was to avoid litigation.").

For another thing, sales of business assets are sensitive, depending on timing, market conditions, and other dynamics. A transaction that is lost is hard to replace. If Accendo

---

[2] Accendo relies on dicta in *SG Cowen Securities Corp. v. Missih*, 224 F.3d 79 (2d Cir. 2000), but the question there was whether courts may consider traditional preliminary injunctive standards under N.Y. C.P.L.R. § 7502, not whether courts must limit injunction analysis to the merits of the substantive claims in the arbitration.

is permitted to enforce the Mexico Injunction to prevent a sale of the subsidiaries to a third party, another equivalent transaction may become speculative.[3]

Accendo argues that Petitioners can seek money damages. Mem. in Opp. to Pet., ECF No. 17, at 24. But Accendo's precarious financial position defeats this argument. Many courts inside and out of this Circuit have recognized that even when loss can be compensated with money, the harm may be irreparable if damages are likely to be unobtainable from the target of injunctive relief. *See, e.g., In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985); *Itek Corp. v. First National Bank*, 730 F.2d 19, 22-23 (1st Cir. 1984); *Hughes Network Sys. Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994); *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984); *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2 186, 205-06 (3d Cir. 1990), *holding modified,* 42 F.3d 1421 (3d Cir. 1994). The record here suggests that there is very good reason for Petitioners' concerns. Indeed, Accendo's limited funds seem to have contributed in large part to Accendo's inability to close. *See, e.g.*, Letter from Petitioners to Accendo, Feb. 13, 2018, ECF No. 13-4. As the emergency arbitrator found, "even assuming [Accendo] is right about the amount of money needed to close, this is more than the . . . total capital it currently claims to have." Decision, Oct. 14, 2019, ECF No. 32-2, at ¶ 11.74. And indeed, Accendo itself appears to have doubts about its ability to sustain operations in the event of an adverse result in the parties' arbitration:

> If Accendo's purchase . . . fails, it will possibly cease to exist. Accendo's current capital is approximately USD 30 million and if the transaction does not close it will have an approximately USD 15 million loss, causing it to fall well below the minimum capital requirement under Mexican law. . . . Accendo's success and moreover, its survival, depends on [the purchase].

---

[3] Petitioners also face pressure from Mexican regulatory authorities to sell the Mexico-based subsidiaries. These regulators have threatened both "substantial fines" and "sanction[s]." *See* Petition, ECF No. 1, at ¶ 47 (one regulator has "continually pressured Deutsche Bank to promptly sell . . . and threatened to impose on Deutsche Bank substantial fines if it does not complete [a] sale"); Mem. in Support of Pet., ECF No. 11, at 23 ("Deutsche Bank faces imminent regulatory sanction if it does not promptly sell . . .").

Application for Emergency Measures, September 26, 2019, ECF No. 31-2, at ¶ 13. Were Accendo not to survive, this would introduce the very real possibility that Petitioners would be left (a) without a buyer, either Accendo or any third party; (b) without an ability to recover money damages; and (c) stuck with the businesses in Mexico that it is under pressure to sell.

The Purchase Agreement recognizes this difficulty and provides by agreement that damages from a breach would be "extensive and irreparable":

> The parties hereto hereby acknowledge and agree that immediate, extensive and irreparable damage would result, no adequate remedy at law would exist . . . in the event that any provision of this Agreement is not performed in accordance with its specific terms or otherwise breached.

Purchase Agmt., at § 10.13, ECF No. 1-1, at 70. Although "'contractual language declaring money damages inadequate in the event of a breach does not control . . . whether . . . injunctive relief is appropriate,'" *A.X.M.S. Corp. v. Friedman*, 948 F.Supp.2d 319, 337 (S.D.N.Y. 2013) (quotation marks and emphasis omitted), such language is "one factor that must be considered in deciding whether irreparable harm would result if an injunction did not issue," particularly in a contract between sophisticated parties. *Markovits v. Venture Info Cap., Inc.*, 129 F.Supp.2d 647, 661 (S.D.N.Y. 2001) (citing *North Atl. Instruments v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999)).

In sum, I find that Petitioners have shown the likelihood of irreparable harm.

### iii. Public Interest

Finally, I find that public interest, specifically the "strong public interest in enforcing contracts" between sophisticated entities, *Espiritu Santo Holdings, LP v. L1bero Partners, LP*, No. 19-cv-3930, 2019 WL 2240204, at *26 (S.D.N.Y. May 14, 2019), favors granting the requested injunctive relief here.

**Conclusion**

For the foregoing reasons, the petition for injunctive relief is granted. The Clerk shall enter judgment providing that (a) Accendo is ordered to withdraw the Mexico Injunction, and take all steps necessary to achieve such a withdrawal before the Mexico City Court; (b) Accendo is ordered to refrain from enforcing the Mexico Injunction while it remains in effect; and (c) costs shall be taxed against Accendo.

SO ORDERED.

Dated: October 17, 2019
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge